THOMAS A. KELLEY *vs.* ESSEX GLUE AND GELATINE COMPANY.

Essex. November 5, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Corporation. Agency.*

In an action of contract against a corporation, known as a glue company, the declaration alleged that the defendant agreed to buy from the plaintiff at par certain shares of the capital stock of the defendant. The plaintiff introduced evidence showing that he was a manufacturer and that the defendant agreed to buy from him all his glue material for five years, paying for it during the first two years in shares of the defendant's capital stock at par and thereafter in cash, that the plaintiff delivered to the defendant certain glue material and received the shares in question, that the plaintiff asked the defendant's vice president, who also was one of its directors and one of its executive committee of three, whether there was any doubt as to the value of the shares, that the vice president answered, "No, not a bit; if you have any doubt about it I will take it off your hands and pay you a hundred cents on the dollar," that the plaintiff asked the defendant's vice president to put that in writing, whereupon the vice president wrote and signed in his individual name the following: "In regard to our talk over the phone I hereby agree to pay you one hundred cents on the dollar for your stock in the Glue Company." The plaintiff called as a witness the defendant's vice president, who testified that he did not propose to purchase the shares in his own behalf, but he did not testify that he undertook to act in behalf of the defendant or anybody else. He testified that one of the other three members of the executive committee acted in conjunction with him in trying to secure the rights of the plaintiff. *Held,* that the testimony last mentioned did not warrant a finding that a majority of the executive committee

agreed to a purchase of the plaintiff's shares on behalf of the defendant, that there was no evidence that the vice president in signing the agreement to buy the plaintiff's shares was acting for the defendant or was authorized to act for it, and that a verdict rightly was ordered for the defendant.

CONTRACT OR TORT against a corporation, the first count, in tort, alleging in substance that the defendant with intent to defraud the plaintiff made false and fraudulent representations to him, and thereby induced him to deliver to the defendant large quantities of glue material in exchange for shares of the capital stock of the defendant, and the second count, in contract, alleging the breach of a contract to buy from the plaintiff at par one hundred and twenty-seven shares of the capital stock of the defendant. Writ dated July 26, 1906.

In the Superior Court the case was tried before *Bell*, J. The course of the trial and the evidence there presented are described in the opinion. At the close of the plaintiff's case, the defendant rested, and the judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. A. Kelley*, for the plaintiff.

*A. S. Hutchinson*, for the defendant.

LORING, J. The plaintiff abandoned his count in tort and undertook to prove that a contract was made by him with the defendant corporation for the purchase by the defendant of his stock in the defendant corporation.

The defendant is a New Jersey corporation organized some time in 1903, with a place of business in Peabody in this Commonwealth.

The plaintiff is a morocco manufacturer with a place of business in Lynn, was one of the incorporators of the defendant corporation, and on June 17, 1904, was elected a director of it. The directors elected on June 17, 1904, held over until October 21, 1905, when a new election took place. At some time not stated before August 29, 1905, the plaintiff was elected the defendant's treasurer.

On January 25, 1904, the plaintiff and the defendant entered into a contract by which the plaintiff was to deliver to the defendant all his glue material for five years and to be paid for it as follows: For the glue material delivered during the first two years one share of preferred and one half share of common stock

in the defendant corporation for every one hundred dollars' worth of glue material; and for that delivered thereafter, in cash. The plaintiff proceeded to deliver glue material under the contract.

About August 29, 1905, the plaintiff asked one Lennox (who was a director, vice president and one of the executive committee of the defendant corporation) whether there was any doubt as to the value of the stock of the defendant corporation. To which Lennox answered: " No, not a bit ; if you have any doubt about it I will take it off your hands and pay you a hundred cents on the dollar." The plaintiff asked him to put that in writing and Lennox accordingly wrote to the plaintiff the following letter under date of August 29, 1905: " In regard to our talk over the phone I hereby agree to pay you one hundred cents on the dollar for your stock in the Glue Company." This was signed " James T. Lennox."

This letter was admitted *de bene* on the offer of the plaintiff's counsel to make it competent by showing that although the letter was signed by Lennox personally he was in fact acting for the defendant corporation and was authorized to act for it.

The plaintiff failed to do either.

Lennox, when put upon the witness stand, testified that, when he signed the letter of August 29, " I did not propose to purchase Kelley's stock on my own behalf." But he did not testify that in signing that letter he undertook to act on behalf of anybody else, much less that he undertook to act in the defendant's behalf. He testified that " the concern was not successful," and " we were all dissatisfied with the result received from the management of the business and I think we all agreed that it would be a good idea to dispose of it to somebody that would pay more attention to it." But when asked if the purchase of stock was talked over in directors' meetings he persisted in saying that it was not, and went further and said, " I worked entirely independent of the company." Lennox did say that he had negotiated with persons entitled to stock who were in fact a majority of the board of directors, for the sale of their stock. But there was nothing in his testimony that warranted a finding that these negotiations were for a sale to the corporation, or that a majority of the board knew that he was undertaking to buy stock in the defendant's behalf.

Lennox also testified that one Clark " acted in conjunction with me in trying to secure the rights of the tanners." Clark and Lennox were a majority of the executive committee which consisted of three persons. But this evidence did not warrant a finding that a majority of the executive committee agreed to a purchase of the tanners' stock on behalf of the corporation.

The only other evidence introduced by the plaintiff was the testimony of an attorney at law. But there was nothing in his testimony which helped the plaintiff. It has not been alluded to by the learned counsel for the plaintiff either in his argument or in his brief and need not be stated.

*Exceptions overruled.*